United States Court of Appeals
For the Eighth Circuit
_____

No. 13-1207
_____

United States of America

*Plaintiff - Appellee*

v.

Lewis Pate, True Name Lewis Antwhane Pate, III

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 13, 2013
Filed: June 6, 2014

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

      Minnesota federal jurors convicted Lewis Pate of being a felon in possession of a firearm, and the district court[1] sentenced him pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), to serve 200 months in prison. In this

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

appeal, Pate challenges (1) his conviction, arguing insufficiency of the evidence; and (2) his sentence, asserting a Minnesota conviction for fleeing a police officer in a motor vehicle, see Minn. Stat. § 609.487, subd. 3, is not a violent felony within the meaning of the ACCA's residual clause.

Since the parties filed their original briefs, the Supreme Court issued an intervening ACCA decision in Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276 (2013), and we requested supplemental briefing to address the applicability of Descamps to this case. Suggesting Minn. Stat. § 609.487, subd. 3, is textually indivisible under Descamps, Pate maintains his Minnesota motor vehicle flight convictions are no longer violent felonies. After careful review, we conclude Descamps does not alter our earlier holding that fleeing a police officer in a motor vehicle in violation of Minn. Stat. § 609.487, subd. 3, qualifies under the ACCA's residual clause, see United States v. Bartel, 698 F.3d 658, 662 (8th Cir. 2012). Accordingly, we affirm.

## I.   BACKGROUND

Pate's case began with an exchange of gunfire on a Tuesday afternoon in St. Paul, Minnesota. Two men in black hoodies fired shots at another man, who returned fire. After the men ran away, police officers arrived at the scene, and followed a tracking dog to a residence approximately two blocks away. Officers discovered one shooting suspect sitting in a parked car. Having reason to believe one of the shooters, still armed, was inside the residence, the officers entered with the tracking dog to conduct a security sweep. Pate then gave himself up, claiming "I'm the one that was being shot at." After receiving a search warrant for the residence, officers located a .38 caliber revolver wrapped in a towel hidden inside a hamper. Officers also found a black hoodie hidden behind a couch.

Later that evening, Pate (apparently unaware the police had already found the gun) called various individuals from jail and asked them to "get [his] *money*" out of

-2-

the residence. (Emphasis added). Despite his effort to speak in code, Pate repeatedly gave away his intent. For example, trying to clarify what he meant by "money," he explained on one call, "They tryin' to charge me wit' a firearm, man. . . . You feel what I'm sayin', though?" In an interview with law enforcement personnel the following day, Pate admitted the gun was his. He said he recently purchased the gun for $100, but insisted he was not carrying the firearm at the time of the shooting. Pate's story—that he was driving a car when a single shooter opened fire on him—was inconsistent with eyewitness testimony and physical evidence.

After a three-day trial, the jury found Pate guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Relying in part on Pate's prior convictions for fleeing a police officer in a motor vehicle, see Minn. Stat. § 609.487, subd. 3, the government asked the district court to sentence Pate as an armed career criminal. Pate objected, maintaining the fleeing convictions did not qualify under the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), and contending the residual clause is unconstitutionally vague. The district court overruled Pate's objections, found him an armed career criminal, and calculated an advisory guidelines range of 262 to 327 months, which was higher than the statutory minimum prison sentence of 180 months (the ACCA's 15 year minimum). The district court ultimately granted a downward variance to 200 months based on Pate's youth (age 24) and difficult upbringing.

Pate timely appeals both his conviction and sentence, invoking our 28 U.S.C. § 1291 jurisdiction.

## II. DISCUSSION

Pate raises several issues on appeal. Because Pate was represented by counsel and "[a] district court has no obligation to entertain pro se motions filed by a represented party," Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001), we preliminarily and promptly reject Pate's claim that the district "court erred by not

-3-

ruling on [his] pro se motions." Next, we consider Pate's challenge to the conviction, before concluding with consideration of his ACCA arguments.

### A.  Firearm Conviction

Although our standard of review is de novo, we will not lightly overturn a jury's verdict.  See, e.g., United States v. Causevic, 636 F.3d 998, 1005 (8th Cir. 2011).  We view the evidence in the light most favorable to the verdict and "may not reverse unless no reasonable jury could have found" Pate "guilty beyond a reasonable doubt."  Id.  In Pate's case, the evidence amply supports the jury's guilty verdict.

Having charged Pate with being a felon in possession of a firearm, the government had to prove, among other elements, "that he knowingly possessed a firearm." United States v. Abfalter, 340 F.3d 646, 654 (8th Cir. 2003).  Pate admitted in a recorded interview with law enforcement personnel that the gun was his, and now concedes "the jail conversations demonstrate . . . his knowledge that there was a gun in the bathroom at [the residence] and that he wanted it out of there."  Although the jury heard recordings of Pate's confessions and calls from the jail, Pate still argues the evidence did not specifically link him to the .38 caliber revolver.  But these recordings support the imminently reasonable inference that the gun he owned and wanted out of the residence was the same gun found by police shortly after his arrest, and we accept any reasonable inference that supports the jury's verdict.  See, e.g., Causevic, 636 F.3d at 1005.  Pate fails to clear the high bar required for us to reverse the conviction.

### B.  ACCA Sentence

Generally, we review whether a district court's sentencing decision represents an abuse of discretion, following the Supreme Court's prescription in Gall v. United States, 552 U.S. 38, 51 (2007).  Whether a prior conviction counts as a "violent felony" under the ACCA's residual clause is a legal question, however, which we review de novo.  See, e.g., United States v. Chappell, 704 F.3d 551, 552 (8th Cir.

2013). Pate claims he is not an armed career criminal for three reasons, which we consider and reject in turn.

### 1. Descamps

First, following our request for supplemental briefing, Pate now relies on Descamps to support his previously cursory claim that Sykes v. United States, 564 U.S. ___, 131 S. Ct. 2267 (2011), and Bartel were wrongly decided. We cannot for even a moment entertain Pate's theory that the Supreme Court "wrongfully decided" Sykes. "If the [Supreme Court's] decision in [a] case is to be modified, overruled or disregarded, that will have to be done by the Supreme Court." Bakewell v. United States, 110 F.2d 564, 564 (8th Cir. 1940) (per curiam). On the other hand, Pate's request that we reconsider our Bartel decision in light of Descamps merits careful consideration.

When determining whether a state-law conviction qualifies as a violent felony under the ACCA, sentencing courts must look "to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600 (1990). Only "in a narrow range of cases," id. at 602, may a sentencing court consider the underlying "trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms," Johnson v. United States, 559 U.S. 133, 144 (2010). In Descamps, evaluating the enumerated-crimes clause of the ACCA, the Court clarified, "A court may use the modified approach *only* to determine which alternative element in a *divisible* statute formed the basis of the defendant's conviction." Descamps, 570 U.S. at ___, 133 S. Ct. at 2293 (emphasis added). We recently extended Descamps to the ACCA's residual clause. See United States v. Tucker, 740 F.3d 1177, 1182 (8th Cir. 2014) (en banc).

-5-

In accordance with Tucker, we view Minn. Stat. § 609.487, subd. 3, through the lens of Descamps:

> Whoever by means of a motor vehicle *flees or attempts to flee* a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony and may be sentenced to imprisonment for not more than three years and one day or to payment of a fine of not more than $5,000, or both.

(Emphasis added). The statute defines the term "flee" in a disjunctive manner:

> For purposes of [§ 609.487], the term "flee" means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

Id. § 609.487, subd. 1. Yet the statute "does not require the factfinder (whether jury or judge) to" determine *how* the defendant fled (i.e., the means of flight), Descamps, 570 U.S. at ___, 133 S. Ct. at 2293, because the *method* "used to flee the peace officers is not an element of the crime," State v. Hansen, No. C9-01-240, 2001 WL 1607741, at *1 (Minn. Ct. App. Dec. 18, 2001) (unpublished); see also 10A Minn. Prac., Jury Instr. Guides—Criminal § 24.17 (5th ed. 2013). Thus, the statute is divisible between completed ("flees") and inchoate ("attempts to flee") offenses, but is otherwise indivisible.

Because Minn. Stat. § 609.487, subd. 3, as relevant to this case, is indivisible and is not one of the enumerated offenses listed in § 924(e)(2)(B)(ii), we "examine whether 'the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another.'" Tucker, 740 F.3d at 1182-83 (emphasis added) (quoting James v. United States, 550 U.S. 192, 208

-6-

(2007)).  Judge Morris S. Arnold, writing for our court in Bartel, answered yes to this question, explaining "ordinary violations of the Minnesota statute do present a serious risk of injury to others."  Bartel, 698 F.3d at 662.  Nothing in Descamps changes Judge Arnold's answer, which we continue to think is mandated by the Supreme Court's decision in Sykes.

"Risk of violence is inherent to vehicle flight."  Sykes, 564 U.S. at ___, 131 S. Ct. at 2274.  "Although statistics are not dispositive," they reveal the high risk associated with vehicular flight: "Studies show that between 18% and 41% of chases involve crashes, which always carry a risk of injury, and that between 4% and 17% of all chases end in injury."  Id.  We recognize the statistics cited in Sykes are by now several years old, but they reflect the Supreme Court's reasoning and presumably reflect the risk associated with Pate's fleeing convictions, which are also several years old.  In any event, Pate has not presented newer statistical evidence, let alone other statistics or evidence contradicting the statistics discussed by the Court in Sykes.

While Pate speculates someone could violate Minn. Stat. § 609.487, subd. 3, without any risk of injury by "pulling over, parking safely, and extinguishing [the car's] lights," he cites no example of anyone prosecuted for this hypothetical violation, and our review of Minnesota cases reveals none.  It is not easy to see how the conduct Pate imagines—"pulling over, parking safely, and extinguishing [the car's] lights"—would evince an "intent to elude a peace officer," as this is precisely the conduct a peace officer, in flashing his or her lights, ordinarily demands.  For this conduct to "elude a peace officer" would require either an antecedent violation of the statute (e.g., refusing to stop and driving out of the officer's sight before hiding by turning off the lights) or a peace officer with unusually poor perception skills.  Even if "a person could, for instance, safely 'extinguish motor vehicle headlights or taillights . . . *with intent to attempt to elude a peace officer*,'" we cannot say that this practice, in the ordinary case, does not present a serious potential risk of injury to

others." Bartel, 698 F.3d at 662 (emphasis added); see also, e.g., United States v. Askew, 384 F. App'x 504, 506 n.3, 509 (7th Cir. 2010) (unpublished unsigned order).

We also reject Pate's assertion that Minn. Stat. § 609.487, subd. 3, lacks a knowing or intentional *mens rea* requirement. The statute expressly requires proof of "*intent* to attempt to elude a peace officer." Minn. Stat. § 609.487, subd. 1 (emphasis added). This requirement is evident from the statutory text, see id.; from Minnesota's jury instructions, which demand "intent to attempt to elude a peace officer," 10A Minn. Prac., Jury Instr. Guides—Criminal, supra, § 24.17; and from the Minnesota Supreme Court's longstanding reluctance to dispense with the common law's traditional *mens rea* requirement, see, e.g., State v. Ndikum, 815 N.W.2d 816, 819 (Minn. 2012).

Having reviewed the statute in light of Descamps, we reaffirm Bartel and again "hold that a violation of Minnesota Statute § 609.487, subd. 3 'presents a serious potential risk of physical injury to another' and is therefore a 'violent felony' under the ACCA." Bartel, 698 F.3d at 662.

    **2.**    *Ex Post Facto* **Clause**

Second, citing United States v. Tyler, 580 F.3d 722, 726 (8th Cir. 2009), for the premise that his two Minnesota fleeing convictions were not violent felonies at the time of conviction (2007 and 2008), Pate insists that treating these convictions as ACCA predicates violates one of the *Ex Post Facto* Clauses, U.S. Const. art. I, § 9, cl. 3. The Supreme Court's decision in Rogers v. Tennessee, 532 U.S. 451, 462 (2001), indicates otherwise.

As Justice Chase explained in his oft-quoted opinion in Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798) (quoted recently in Peugh v. United States, 569 U.S. ___, ___, 133 S. Ct. 2072, 2081 (2013)), constitutionally prohibited *ex post facto* laws include any "law that changes the punishment, and inflicts a greater punishment, than

-8-

the law annexed to the crime, when committed." Pate cannot complain the ACCA itself is an *ex post facto* law because it was enacted before his crimes. Instead, he contends the Supreme Court's decision in Sykes, by requiring our court to revisit and overrule Tyler after Pate's fleeing convictions, see Bartel, 698 F.3d at 662, was "the equivalent of a *judicially created ex post facto* violation, because . . . he was not subject to ACCA treatment when he committed the fleeing offenses." (Emphasis added).

Pate's contention is flawed because "the *Ex Post Facto* Clause does not apply to judicial decisionmaking." Rogers, 532 U.S. at 462. Certain "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process," id. at 456, but these "'due process limitations' . . . *are not coextensive* with the limitations placed on legislatures by the Constitution's *Ex Post Facto* Clauses," Metrish v. Lancaster, 569 U.S. ___, ___, 133 S. Ct. 1781, 1788 (2013) (emphasis added) (quoting Rogers, 532 U.S. at 459). A judicial shift in "criminal law violates the principle of fair warning, and hence must not be given retroactive effect, *only* where it is '*unexpected and indefensible* by reference to the law which had been expressed *prior to the conduct in issue*.'" Rogers, 532 U.S. at 462 (emphasis added) (quoting Bouie v. City of Columbia, 378 U.S. 347, 354 (1964)). The conduct at issue here is not, as Pate thinks, his prior flight; it is the firearm possession charge being appealed here. See Vartelas v. Holder, 566 U.S. ___, ___, 132 S. Ct. 1479, 1489-90 (2012) (citing United States v. Pfeifer, 371 F.3d 430, 436 (8th Cir. 2004)). Pate possessed the firearm after the Court decided Sykes, which means he cannot claim to be surprised Sykes applies to him, even assuming Pate is an avid reader of the case law. See id.; see also Sykes, 564 U.S. at ___, 131 S. Ct. at 2276-77 (decided June 9, 2011).

Even if Pate were right to focus on the law at the time of his prior convictions, the earliest case he cites to show his fleeing convictions were not ACCA-qualifying offenses was decided *after* both convictions, which occurred on October 12, 2007, and February 20, 2008. See Tyler, 580 F.3d at 722 (filed September 4, 2009). At the

-9-

time of his convictions, several of our sister circuits had reached the opposite conclusion, interpreting laws similar to Minn. Stat. § 609.487. In 2005, for example, the First Circuit reviewed several circuit cases and found "[a] consensus . . . that evasive driving offenses, like prison escapes, constitute a category of 'violent' crime within the meaning of [the residual clause]." Powell v. United States, 430 F.3d 490, 491-92 (1st Cir. 2005) (per curiam). These cases, decided before Pate's fleeing offenses, meant Tyler was far from foreordained. See Rogers, 532 U.S. at 462. Even before Sykes, one member of our court wrote that "Tyler was wrongly decided." United States v. Furqueron, 605 F.3d 612, 616-17 (8th Cir. 2010) (Riley, C.J., concurring).

Therefore, Sykes and Bartel were not "unexpected and indefensible," Bouie, 378 U.S. at 354, and we reject Pate's *ex post facto* challenge.

### 3. Vagueness

Third, relying on Justice Scalia's dissent in Sykes, 564 U.S. at ___, 131 S. Ct. at 2284 (Scalia, J., dissenting), Pate claims "[t]he ACCA's residual clause is void for vagueness and hence unconstitutional." Justice Scalia's views on this point are well known and eloquently expressed, but they have not been adopted by the Supreme Court. See, e.g., id. at 2284-88. Whatever we personally might think, our court has already rejected the vagueness argument Pate asks us to adopt. In United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005), we found "no merit" in the argument "that § 924(e) is unconstitutionally vague." "[N]ot being free as a panel to overrule" Childs, "we are obliged to affirm." United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996).

## III. CONCLUSION

Affirmed.

_____

-10-