```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

-----------------------------------------------------------
                              )   CRIMINAL FILE
UNITED STATES OF AMERICA      )   NO. 12-CR-113 (ADM/FLN)
                              )
         vs.                  )
                              )   Courtroom 13 West
LEWIS ANTWHANE PATE, III      )   Thursday, December 17, 2015
                              )   Minneapolis, Minnesota
-----------------------------------------------------------
```

## RESENTENCING

BEFORE THE HONORABLE ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S:**


For the Government:   **OFFICE OF THE U.S. ATTORNEY**
                      By:  JEFFREY S. PAULSEN
                           Assistant U.S. Attorney
                      600 United States Courthouse
                      300 South Fourth Street
                      Minneapolis, Minnesota  55415


For the Defendant:    **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
                      By:  DOUGLAS OLSON
                           Assistant Federal Defender
                      107 United States Courthouse
                      300 South Fourth Street
                      Minneapolis, Minnesota  55402


Court Reporter:       **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
                      Official Court Reporter - U.S.D.C.
                      1005 United States Courthouse
                      300 South Fourth Street
                      Minneapolis, Minnesota  55415
                      612.664.5108

1        (1:30 p.m.)

2                         **P R O C E E D I N G S**

3                            **IN OPEN COURT**

4        (Defendant present)

5              THE COURT:  Good afternoon.  Please be seated.

6              THE CLERK:  The matter before the Court is USA

7    versus Lewis Pate.

8              Counsel, would you please note your appearances

9    for the record.

10             THE COURT:  Mr. Paulsen, we will start with you.

11             MR. PAULSEN:  Good afternoon.  Jeff Paulsen for

12   the United States.

13             THE COURT:  Mr. Olson?

14             MR. OLSON:  Doug Olson on behalf of Mr. Pate, who

15   is with me.

16             THE COURT:  Good afternoon, Mr. Pate, as well.

17             THE DEFENDANT:  Good afternoon.

18             THE COURT:  As I think we are all well aware, this

19   matter is before the Court once again for purposes of

20   resentencing.  Back in January of 2013, Mr. Pate was

21   sentenced by me to serve a term of 200 months following the

22   conviction on August 15th of 2012 of being an armed career

23   criminal in possession of a firearm.

24             As the result of the June 26, 2015 decision in

25   ***United States vs. Johnson***, which Mr. Olson had a significant

1    role in bringing about, the Supreme Court held that imposing
2    an increased sanction under the residual clause of the Armed
3    Career Criminal Act did violate due process, and given that
4    ruling, that changes the sentencing parameters here and
5    requires that Mr. Pate be resentenced for the conviction of
6    felon in possession of a firearm.
7              The Probation Office has prepared a revised
8    presentence investigation in this matter and counsel on
9    behalf of both the Government and the defendant have filed
10   positions reacting to the revised sentencing parameters in
11   Mr. Pate's case.
12             Are there any objections to the supplemental
13   presentence investigation of the Probation Office,
14   Mr. Paulsen?
15             MR. PAULSEN:  None from the Government, Your
16   Honor.
17             THE COURT:  Mr. Olson?
18             MR. OLSON:  Well, as noted in my position paper,
19   we do object to the guideline calculations, and it's our
20   position that the enhancement for use of a gun in connection
21   with another crime of -- another felony offense shouldn't be
22   applied.  I've briefed that.
23             It's also our position that the conviction for
24   non-residential burglary is not a crime of violence under
25   the gun guidelines, so therefore Mr. Pate only has one prior

1   crime of violence.  Therefore, the Total Offense Level
2   should be 20 and resulting in a guideline range of 70 to 87
3   months.
4           THE COURT:  Okay.
5           MR. OLSON:  And I briefed -- I think I fully
6   briefed -- I have fully briefed that and I just have to make
7   a record.
8           So my objection in connection with -- also relates
9   to the facts and the facts in the PSR, which in large part
10  say things which aren't in the trial.  To the extent that
11  the record -- there's a record here for the trial to make a
12  determination, that should be based on the trial testimony
13  and not the statements in the PSR.
14          THE COURT:  All right.
15          Mr. Paulsen, what's the Government's position on
16  that?  And I do understand that there have been some cases
17  as recently as this week from the Eighth Circuit that bear
18  somewhat on this issue.
19          MR. PAULSEN:  Right.  There was one that just came
20  down yesterday, I think it was --
21          THE COURT:  *Richardson*, is it?
22          MR. PAULSEN:  -- where, yeah, basically it said
23  *Johnson* doesn't apply to the guidelines, and that's my
24  position as well.  But there was pre-existing case law that
25  says that under the guidelines a crime of violence does

1  include a commercial burglary, which is what we're dealing
2  with here.  So either way, I believe the probation officer
3  has correctly found that he still has two remaining crimes
4  of violence.
5           And then the other disputed enhancement is the
6  four-level enhancement for using the gun in connection with
7  another crime of violence, and I'm seeking that and I'm
8  basing it on the testimony at trial, not on any statements
9  in the PSR.  We had a trial in this case where the
10 Government proved there was a shootout on the street and
11 Mr. Pate was part of it by his own admission, although his
12 admission said he didn't have a gun at the time and that he
13 was just a victim, but that wasn't credible, because he's
14 the one that ran in the house and hid and he wouldn't come
15 out until the police were going to send the dog in.  And if
16 he's a victim, you know, why is he hiding from the police?
17 And if he didn't have a gun and wasn't part of the shooting
18 activity, why is he hiding from the police?  Why isn't he
19 the one calling 911?
20          So based on the trial record there is, by a
21 preponderance of the evidence and more, sufficient evidence
22 to support the enhancement for the use of the gun in
23 connection with another felony offense.
24          And even if there weren't -- I mentioned this to
25 Mr. Olson.  Even if there weren't, we get into kind of

1    overlapping guideline ranges, because without the
2    enhancement I think the guideline range would be Level 24,
3    Category VI, which I believe is --
4              THE COURT:  A hundred to 125.
5              MR. PAULSEN:  A hundred to 125 months, and that
6    overlaps with the sentence I'm seeking, which is 120 months,
7    which is the statutory maximum.  I think that is fully
8    justified under either scenario.
9              MR. OLSON:  Could I just make one comment?
10             THE COURT:  Sure.
11             MR. OLSON:  So I have a different view of the
12   trial testimony, and I do quite vividly remember the
13   Government pretty much gave up on trying to establish him as
14   the shooter and argued at the closing, appropriately, they
15   didn't have to prove that and which they didn't.
16             But equally important here is that you got this
17   idea that there's some shooting in an alley.  Well, be that
18   as it may, there's no victim in this case and there's no
19   felony.  I mean, you might have a reckless discharge or
20   something, but you don't have a felony associated with
21   whatever this conduct is here.  There's nothing prosecuted,
22   nothing proved and nothing charged which relates to a
23   felony.  And I'm sorry, but even if you have witnesses who
24   say that they saw unidentified people shooting in an alley,
25   that doesn't make it a felony-level offense and it's all

1  speculation, because there wasn't any pursuit of this, there
2  wasn't any victims identified as somebody being shot at.
3          So at worst in the Government's case you've got
4  some shooting activity, but that still doesn't rise --
5  that's not a felony.  That may be some reckless discharge,
6  gross misdemeanor problem at most, but, you know, it's all
7  completely speculation, and it's four points and that's a
8  big four points.
9          THE COURT:  Well, this is a factual scenario in
10 which we have a trial and the trial transcript to rely on in
11 terms of establishing the basis for the offense rather than
12 what we often have in guideline disputes with regard to the
13 four-point applicability, a less than precise record as it
14 relates to that.
15         But I do think that even without strong proof that
16 Mr. Pate was the shooter on the night in question, that
17 there is a sufficient basis to find that he possessed the
18 firearm in connection with another felony offense or
19 possessed the firearm with knowledge, intent or reason to
20 believe it would be used in connection with another felony
21 offense.
22         So I believe the appropriate guideline is the Base
23 Level Offense of 24 and a Total Offense Level of 28.  It's
24 undisputed that his Criminal History Category remains VI
25 still with 15 criminal history points, which if it were a

1    28-level offense, it would be a guideline range of 140 to
2    175, which of course would be made inapplicable by the
3    statutory maximum of 120 months, so effectively the
4    guidelines sentence is 120 months.
5          I do think that it is important to note and I've
6    evaluated in my decision of what's appropriate under the new
7    environment for Mr. Pate in terms of a sentence the fact
8    that even were those four points to be subtracted and he
9    moved down to a 24, that range would become 100 to 120
10   months, and were that the law, I still think that the 120
11   months' sentence would be appropriate under the
12   circumstances.
13         So that is the guideline structure and my thoughts
14   on that issue.  I guess I should go on and say that the
15   supervised release period is one to three years, the fine
16   range is $12,000 to $125,000, or if that adjustment were to
17   be made it would drop somewhat, but is largely irrelevant
18   given the fact that Mr. Pate is not a candidate to have a
19   fine assessed against him, and there is a $100 special
20   assessment.
21         We've I think addressed many of the arguments that
22   have been made in the sentencing position papers, but I
23   think at this point, Mr. Olson, I did review the
24   certificates and some things with regard to the
25   institutional conduct of Mr. Pate, and I don't want to

1   foreclose you from addressing any of those arguments that
2   you think I may not be aware of or that you wanted to make
3   of record.
4               MR. OLSON:  Well, as I've said in my position
5   paper, you know, I guess there's two things that come to
6   mind.  And I'm not going to -- the Court has read my
7   position paper concerning his prior record and property
8   offenses and the fact that this is a young man who
9   previously had only spent about a year in prison before
10  this.  This is already by far his longest term of
11  incarceration.  He's been in prison for about three years.
12              But, you know, this gets to be -- you know, this
13  is my first *Johnson* resentencing where I've had a person who
14  really went to trial because he was an armed career
15  criminal, and there's no question in my mind that that's why
16  we were in trial and then you get whammied with these
17  additional points and you don't get the benefit of
18  acceptance of responsibility.  That's just the way it is.
19  And I'm not arguing that you should give the three points
20  because I know the law is squarely against me.
21              Unfortunately, the truth of the matter is that
22  this case comes in to us in a completely different posture
23  if he wasn't an armed career criminal, and I think it's
24  resolved and we're not here looking at guidelines of this
25  sort or what otherwise would be an unnecessary trial.

1          I just say that because I think that's just a
2  factual truth of what the situation was.  The Court saw the
3  evidence.  Mr. Pate didn't testify.  He more or less
4  confessed to the officers he had a gun.  And, you know, 22
5  years old, he wanted a trial.  Okay.
6          So I think the Court can at least keep that in the
7  back of your mind in terms of deciding whether you should
8  give him some relief from the harshness of the 120-month
9  penalty being requested and the guidelines.
10         And the other thing is -- I mean, there was a
11 reason that the Court did depart down a number years ago
12 when we were before you and Mr. Pate does have significant
13 support.  Once again, his mother, family members, got the
14 little daughter there, other people that care about him are
15 here, and they sat through a lot of the proceedings before,
16 polite and decent people.  They wouldn't be here if he was,
17 you know, just a jerk and not somebody worth caring about.
18         And I said this I think a couple years ago and
19 I'll say it again.  You know, Mr. Pate, you know, okay, he's
20 got some background and he's been in trouble here and there
21 and I guess his adult years haven't been the greatest, but I
22 think underneath it at all there's a young man now -- are
23 you 27 now?
24              THE DEFENDANT:  Yup.
25              MR. OLSON:  Twenty-seven, soon to be 28.  He's got

1    some wherewithal about him.  You know, he took upon his own
2    initiative to file his own *pro se* 2255, threw in **Johnson** in
3    the petition before **Johnson** was even decided, did that all
4    on his own.
5                You know, he's intelligent, but he's uneducated
6    like a lot of young black people we see, but I think he's
7    got some wherewithal.  He means well.  He doesn't plan on
8    going back to a life of violent behavior or being a gang
9    member and getting into trouble anymore, because -- well,
10   he's seen it.  I mean, he's lucky.  He knows he's lucky to
11   be here, because he's sitting there in the USP doing what
12   was 200 months and just because of what happened in the
13   **Johnson** decision, now he's down to 10 years and I'm asking
14   the Court to maybe cut that back a little bit.
15               He is an okay, decent guy, and like I said, I
16   think there's a reason that you cut him a little bit of
17   slack a few years ago and maybe you could see it in your
18   heart to give him something less than the 120 here.
19               And I wish him well, because like I said, he was a
20   nice -- you know, nice client to have because he wasn't
21   talking in my ear, he wasn't raising problems during trial.
22   He sat there patiently, saw the trial process through.  Like
23   I said, I think he's got some ability there.  I think while
24   he's uneducated, he's intelligent.
25               I'll just make a comment about that, because he

1  hasn't earned his GED.  And one of the problems with the USP
2  that he's been at is that they've had race riots there and
3  twice the whole institution has been locked down.  So to the
4  extent that he's had programming, he hasn't been able to get
5  his GED.  He's done a lot of certificates while he could,
6  but then they go down to lockdown and he can't get anything
7  done.  Last time he was in another race riot, people got
8  stabbed there, and it's a horrible, dangerous situation,
9  really an eye-opening for him.  Like I said, he had never
10 done much time before that, to go to a USP with some really,
11 really bad people.  So he's learned something by being
12 exposed to those people and that environment.  Unfortunately
13 he's got to do more time, but I think he's learned his
14 lesson.
15         So whatever happens here, I think he's learned his
16 lesson.  He's not going to go back to a life of crime.  He's
17 going to finish his education and do something with his
18 life, take care of his significant others and his children.
19         THE COURT:  Thank you, Mr. Olson.
20         Mr. Paulsen, did you have anything further?
21         MR. PAULSEN:  Well, I agree that Mr. Pate was
22 well-behaved at trial, but unfortunately he hasn't been so
23 well-behaved while he's been in prison.
24         According to the PSR at paragraph 63, he's had a
25 number of violations.  Some are minor, but the two that

1    bother me are assaulting another inmate by striking him with
2    a chair and possessing a dangerous weapon.  They've taken
3    away his good-time credit twice for these types of things.
4         I notice he's sporting some new tattoos that he
5    didn't have before.  I don't know what they signify, but
6    usually prison tattoos are not a good sign.
7         So I'm adhering to my recommendation of 120
8    months, Your Honor.
9         THE COURT:  All right.  Mr. Pate, I'm going to
10   have you come to the lectern with Mr. Olson --
11       (Defendant and Mr. Olson approach lectern)
12        THE COURT:  -- if there's anything you'd like to
13   say.  You don't have to say anything.  Obviously Mr. Olson
14   has spoken well for you.  But I'd be happy to hear from you.
15        THE DEFENDANT:  I don't have nothing to say, Your
16   Honor.
17        THE COURT:  Okay.  Well, I found back when I
18   originally sentenced you this to be a sad and difficult
19   sentencing.  Obviously the time limits and the numbers were
20   huge then.  They're still large numbers.  It's been moved
21   down as the result of the *Johnson* decision, which of course
22   you get the benefit of, which is good news for you, and your
23   sentence is going to be, regardless of the little room I
24   have to adjust within the new range, a lesser sentence.
25        I am troubled by some of the facts that

1   Mr. Paulsen talked about, that since I've last seen you,
2   it's not been a smooth road.  And I understand you've been
3   in difficult circumstances and in placement situations in
4   prisons that have caused problems, but I don't see a whole
5   lot of reason to be hopeful.
6           There's a nice stack -- and I don't mean to
7   overlook them, I don't think they're insignificant -- of
8   things, programs you have completed on various areas,
9   learning wellness, nutrition, thinking skills, first aid,
10  security awareness, decisionmaking skills, all of which I
11  think you greatly need.
12          I would like to have seen that you finished your
13  GED.  Mr. Olson has a response to that that why haven't you
14  that I guess I'll accept, but I don't see a whole lot --
15  these other incidents of assaultive behavior within the
16  prison obviously is worrisome.  And under the circumstances
17  I'll give you the benefit of the *Johnson* decision, but I
18  gave you as much consideration as I could before to adjust
19  downward and I don't see the situation as having changed
20  significantly since then with regard to your outlook.
21          I'm still really bothered that you never really
22  show any employment history or interest in supporting your
23  many dependents and I hope you can turn that around when you
24  get out.
25          Lewis Pate, III, you have been charged in an

1    indictment with being a felon in possession of a firearm in
2    violation of Title 18, United States Code, Section 922(g)(1)
3    and 922(a)(2).
4              And let me state for purposes of the record:  At
5    this time the Court vacates its earlier imposed sentence on
6    January 18th of 2013.  I imposed a sentence of 200 months,
7    which is at this point vacated and in its stead I will apply
8    a sentence that you are committed to the custody of the
9    Bureau of Prisons for a term of 120 months.  Obviously you
10   are to receive credit for the time already served in this
11   offense.
12             It is ordered that you serve a supervised release
13   term of five years under the conditions that:
14             You are not to commit any crimes; federal, state,
15   or local.
16             You are to abide by the standard conditions of
17   supervised release as recommended by the Sentencing
18   Commission.
19             You are ordered not to possess any firearms or
20   other dangerous weapons.
21             You are not to illegally possess a controlled
22   substance and shall refrain from any unlawful use of
23   controlled substances.
24             You are ordered to submit to one drug test within
25   15 days of release from imprisonment or at least two

1   periodic drug tests thereafter as determined by the Court.
2              You are also ordered to cooperate in the
3   collection of your DNA as directed by the Probation Office.
4              You are required to participate in a program for
5   substance abuse approved by the Probation Office, and that
6   may include testing, inpatient or outpatient treatment,
7   counseling, or a support group, and you are ordered to
8   contribute to the costs of such treatment as determined by
9   the Probation Office Copayment Program.
10             It is ordered that you participate in educational
11  programming to obtain your GED at this point or a high
12  school diploma.
13             It is ordered that you cooperate with child
14  support officials to make regular support payments and pay
15  for any outstanding child support obligations.
16             During the period of your supervised release, if
17  you are not employed at a regular lawful occupation deemed
18  appropriate by the Probation Office, you may be required to
19  perform up to 20 hours of community service per week until
20  fully employed.
21             You may also participate in training, counseling,
22  daily job search or other employment-related activities.
23             It is also ordered you pay a special assessment of
24  $100, which is due immediately, but no fine will be imposed.
25             The special assessment probably was paid

1  previously, was it not?

2         MR. PAULSEN:  I suspect it was, but the probation
3  officer reminds me that under the new statutory max of ten
4  years you can only give three years maximum supervised
5  release, not five, so that should be corrected.

6         THE COURT:  Thank you.  Good catch, Ms. Heino.

7         And I do adjust that to reflect that the
8  supervised release term is three rather than five years.

9         And I'll say that the special assessment should be
10 paid if it hasn't been previously.

11        There is a right to appeal this sentence, I
12 assume, since it's a new sentence, but you would have to
13 file a notice of appeal within 14 days, and Mr. Pate is
14 entitled to the continued assistance of counsel.

15        I do find that this sentence of 120 months is
16 sufficient to comply with the statutory objectives
17 considering the totality of the circumstances, including the
18 revised sentencing considerations in light of ***Johnson***.  I
19 think 120 is still appropriate.

20        As I indicated before, were the case law to
21 develop such that the appropriate level would move the
22 defendant from 28 down to 24 points, the sentence that this
23 Court would impose would still be 120 months, which would be
24 within that applicable range.

25        Anything further from the Government?

1         MR. PAULSEN:  No, Your Honor.

2         THE COURT:  From the defense?

3         MR. OLSON:  Just two things.

4         So Defendant objects to the sentence on procedural grounds as noted in terms of the guideline objections previously noted and then on substantive reasonableness grounds.

8         And then I have one last request.  My understanding after talking with Probation is that the Bureau of Prisons is not necessarily redesignating people.  They're bringing them on a writ and sending them back.  In this case he'd go back to the USP from which he came.  And I'm suggesting -- I ask the Court in its judgment and commitment portion to at least suggest to the BOP to review the case for possible redesignation.  And to the extent there's a recommendation, which is usually made at sentencing, I'm going to ask the Court to recommend that he be placed at the facility at Oxford, Wisconsin.

19        What's happened here is that he ends up at a USP.  He's right on the margins there.  I think that if he was re-reviewed and redesignated, he ends up out of a USP, and the natural place for a guy with his geography, he would probably end up at Oxford where his family could visit him.  So I'm asking the Court to at least throw something to that effect in the judgment and commitment.

1         THE COURT: I'm willing to include a
2    recommendation that he be redesignated by the Bureau of
3    Prisons and looked at for redesignation. I don't think I'll
4    recommend a specific institution. We'll let them adjust his
5    guidelines, see where he fits within the new -- I take it
6    there are going to be lots of people who are being adjusted
7    and the parameters of who goes where may be affected, but
8    I'll ask that the BOP consider redesignation.
9         MR. OLSON: Thank you.
10        THE COURT: Anything further?
11        MR. PAULSEN: Not from the Government.
12        THE COURT: Court will be in recess.
13        (Proceedings concluded at 2:00 p.m.)
14              *     *     *     *

# C E R T I F I C A T E

I, **TIMOTHY J. WILLETTE**, Official Court Reporter for the United States District Court, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes, taken in the aforementioned matter, to the best of my skill and ability.

*/s/ Timothy J. Willette*

**TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
Official Court Reporter - U.S. District Court
1005 United States Courthouse
300 South Fourth Street
Minneapolis, Minnesota  55415-2247
612.664.5108